IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 7, 2008

## KEITH COLLINS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. I05-00031     James M. Lammey, Jr., Judge**

---

**No. W2007-02900-CCA-R3-PC  - Filed January 14, 2009**

---

The petitioner, Keith Collins, appeals from the post-conviction court's denial of post-conviction relief.  On appeal, he argues that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea.  Following our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Eran Julian, Memphis, Tennessee, for the appellant, Keith Collins; Matthew Eggleston at trial.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Karen Cook and David Michael Zak, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  BACKGROUND**

The petitioner, Keith Collins, pled guilty to one count of sexual battery, a Class E felony.  At the guilty plea hearing, the state recited the factual basis for the petitioner's plea as follows:

> Had the matter gone to trial, the State's proof would have been that on February 26th at approximately 1110 hours, officer reported that she approached Cell No. 8, housed by the defendant Keith Collins.  She let the flap on the cell door down so the defendant could receive his tray and a cup of kool-aid.  The defendant reached outside the cell door through the flap and grabbed her inner thigh.  The officer closed the flap and asked Inmate Collins, "Why did you touch me?"  Defendant stated, "I didn't touch your pussy but I want to touch your pussy."  No injuries were reported.  This took place here at 201 Poplar first floor pod B.

Pursuant to the plea agreement, the trial court sentenced the petitioner as a Range I, standard offender to eight months, time served. On October 26, 2006, the petitioner filed a pro se petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea. An evidentiary hearing on the post-conviction petition was held on August 31, 2007.

The petitioner's trial counsel testified at the post-conviction hearing that he represented the petitioner in General Sessions, and worked to arrange for the petitioner to plead guilty. He stated that he had a good working relationship with the petitioner. Counsel said he learned that the petitioner was alleged to have had relationships with female deputy jailers during his incarceration. Counsel also learned, during the course of his investigation, that the petitioner was alleged to have harassed multiple female deputies, that the petitioner was not well-liked among the deputies, and the deputies were doing what they could to keep him in isolation. Counsel further noted that the petitioner had been asked to testify against several deputies who were believed to be sneaking items to inmates and engaging in relationships with inmates in violation of jail regulations. According to counsel, the petitioner refused to testify against the deputies and was placed in isolation.

Counsel testified that he met with the Deputy District Attorney General and worked out an agreement which would permit the petitioner to plead guilty to the charges against him. According to counsel, the petitioner would be indicted on criminal information and would then be allowed to plead guilty to sexual battery, a Class E felony. The defendant would be sentenced to time served and released.

Prior to entry of the petitioner's plea, counsel testified that he was summoned to the isolation section of the jail because he received a call regarding the petitioner's attempted suicide. According to deputies, the petitioner threatened to hang himself and refused to speak with anyone but counsel. Counsel stated that when he arrived in the isolation ward of the jail, the petitioner was laughing and informed counsel that he was fine and just needed to get out of his cell. Counsel stated that the petitioner gave him a hug, laughed, and told him that he wasn't trying to kill himself.

Counsel testified that the petitioner was one of the most manipulative inmates he had ever encountered. He described the petitioner as smart, friendly, and able to recall things about counsel that counsel was not aware the petitioner knew. According to counsel, petitioner clearly knew right from wrong and was aware of his situation. The petitioner's primary concern was getting out of the jail and going home. Counsel informed the petitioner that he could get him out of jail that day if the petitioner pled guilty to sexual battery, a felony. In addition, counsel told the petitioner he would be required to sign up on the sexual offender registry. The petitioner told counsel that he wanted out of jail immediately, did not want counsel to conduct an investigation into the charges against him, and stated that he would accept the plea.

On cross-examination, counsel testified that he went over the plea agreement with the petitioner. However, he acknowledged that another attorney stood in for him during the actual plea hearing. Counsel stated that he met with the petitioner a number of times between August and October, more times than he had met with any other client. According to counsel, the petitioner appeared to understand the plea paperwork which included the indictment waiver and judgment

form. Both the indictment waiver and the judgment form specified that the charged offense was a felony. Counsel noted that he reviewed the documents pertaining to the petitioner's plea with the petitioner. The petitioner then signed off on the plea agreement.

The petitioner testified at the post-conviction hearing that when counsel was appointed to represent him, he had been persecuted by deputies in the jail. He stated that the criminal investigation unit wanted him to testify against certain deputies under investigation. The petitioner refused to testify and was placed in isolation and stripped of all privileges, including visitation and phone. The petitioner stated that he was on suicide watch the entire time and attempted to commit suicide at one point.

The petitioner testified that he did not know the sexual battery charge he pled guilty to would be a felony charge. According to the petitioner, he believed the sexual battery conviction would be a misdemeanor. However, he stated that his primary concern and motivation was to get out of the jail. The petitioner also acknowledged that counsel informed him of the fact that he would have to register with the sexual offender registry. Counsel further told him that he could file a post-conviction petition to have himself removed from the registry. The petitioner asserted that he thought he was pleading to a misdemeanor. He also claimed that he was not in his "right mind," was making "a lot of irrational decisions" when he agreed to the plea. The petitioner stated that he contemplated suicide. He said that he cut his neck open prior to entering the plea and was not in a proper frame of mind to understand the consequences of his plea agreement.

The petitioner testified that counsel did a good job. He acknowledged that counsel was looking out for the petitioner's best interest and stated that he probably would have killed himself if he had remained in the jail any longer. The petitioner stated that although he pled guilty to get out of jail, he did not understand the nature and consequences of the plea.

On cross-examination, the petitioner testified that he was present during his guilty plea hearing. However, he did not recall pleading guilty to felony sexual battery. The petitioner claimed that counsel did not review the plea paperwork with him prior to the entry of his plea. The petitioner also claimed that he did not review the transcript of the guilty plea proceeding. The petitioner admitted that he was present, pled guilty, and acknowledged that the facts as they were read to him were true. He remembered being asked about his educational level and about relinquishing his right to a jury trial. The petitioner also recalled an exchange about the fact that his plea was time-served and he would be released from jail that day. The petitioner acknowledged that he answered in the affirmative when asked if he understood that by pleading guilty he would be released from custody. However, the petitioner claimed that when he stated he understood, he was not in his right mind. He stated that when he signed off on the plea paperwork, the judgment form, and other documents which stated that his conviction was for felony sexual battery, he was not paying attention. The petitioner acknowledged that he got out of jail but asserted that he did not want a sexual felony conviction on his record.

At the conclusion of the hearing, the post-conviction court noted that the petitioner signed a waiver indicating his understanding of the plea agreement. Further, the post-conviction court noted that the plea was announced in open court and that the trial court judge asked petitioner whether he

3

understood the plea terms and whether the plea was voluntary. The post-conviction court held that the petitioner failed to prove by clear and convincing evidence that counsel was ineffective. Furthermore, the court held that counsel's representation of the petitioner was within the range of competence of an attorney in a criminal case. The post-conviction court concluded that counsel was not deficient, nor was the petitioner prejudiced by counsel's performance under the test in *Strickland v. Washington*. Because counsel's performance did not fall below the objective standards of reasonableness, the petition for post-conviction relief was denied.

## II. ANALYSIS

The petitioner argues that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Both deficient performance and prejudice must be established. *Strickland*, 466 U.S. at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994). When determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative

courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). A plea is not voluntary or knowing if it results from ignorance, misunderstanding, coercion, inducements or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). When determining the knowing and voluntary nature of the guilty plea, the court must look to various circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In the instant case, the record supports the post-conviction court's findings that the petitioner's guilty plea was knowing, intelligent, and voluntary. Counsel testified that he explained the plea to the petitioner and reviewed it with him before the petitioner signed it. The transcript at the plea submission hearing reflects that the petitioner was questioned extensively about his understanding of the plea prior to its entry in open court. The record clearly indicates that the petitioner was intelligent, was represented by competent counsel, was advised of the charge against him, knew that the charged offense was a felony, and nonetheless chose to plead guilty in order to obtain a release from jail. Furthermore, the petitioner acknowledged that counsel "did a good job," and got him out of jail, which was the petitioner's objective. Accordingly, the record does not preponderate against the post-conviction court's findings that the petitioner received the effective assistance of counsel and that the petitioner's guilty plea was knowing and voluntary. Therefore, he is not entitled to relief.

## CONCLUSION

Based on the appellate record and the foregoing reasoning, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE

5